UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA     Plaintiff

v.     Criminal Action No. 4:21-CR-00029

ELIZABETH BREANNE HARRIS     Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Defendant Elizabeth Breanne Harris ("Harris") moves for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A) asserting that she is the only available caregiver for her ailing father. [DE 116 at 580; DE 132 at 665]. She has filed two nearly identical form requests for release [DE 116 (filed Dec. 26, 2023); DE 132 (filed May 6, 2024)], although the second request contains additional details regarding her father's condition.

The United States was ordered by the Court to respond to Harris' first motion for compassionate release, [DE 119 (filed Jan. 18, 2024)] and the United States requested an extension [DE 124 (filed Feb. 20, 2024)] which was granted [DE 125 (filed Feb. 21, 2024)] with a response due by March 5, 2024. No response was ever received. Four days after the filing of Harris' second request for compassionate release [DE 132 (filed May 6, 2024)], the United States was again ordered to respond [DE 134 (filed May 10, 2024)], and again the United States requested an extension [DE 135 (filed May 30, 2024)] which was granted [DE 136 (filed May 31, 2024)] with a response due by June 13, 2024. Simply put, the United States has failed to comply with the Court's order to respond despite numerous requests and opportunities to do so.

Harris has also filed letters of support from her father [DE 117; DE 118] as well as numerous other letters to the Court [DE 121 (BOP materials); DE 122 (personal letter requesting

1

release); DE 130 (personal letter requesting release and noting the United States failure to timely respond to court's order for response); DE 131 (personal letter requesting release); DE 133 (personal letter with additional medical information regarding father and asking the government to concede to her release in light of their failure to respond); DE 140 (personal letter asking the government to concede to her release in light of its failure to comply with court orders); DE 141 (personal letter challenging BOP's calculation of the time for home confinement and refusal to consider her Release Plan)]. In addition, the United States District Court Clerk's Office has received numerous calls from family members inquiring about Harris' request.[1]

In addition, Harris filed a "Motion for Sentence Reduction Under Amendment 821 Part B" [DE 123 (filed Feb 8, 2024)] which was reviewed by the United States Probation Office and the Court and denied [DE 126 (filed March 19, 2024)]. The Court determined that "[w]hile she is a zero point offender, her original sentence of 36 months is less than the amended guideline range and therefore under 18:3582(c)(2) not eligible for a reduction." [DE 126 at 625].

For the reasons below, Harris' motions for compassionate release [DE 116; DE 132] are **DENIED**.

I.    **BACKGROUND**

On December 6, 2022, pursuant to a Rule 11(c)(1)(B) plea agreement, Harris pled guilty to a single count of conspiracy to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, as defined by Title 21, United States Code, Section 812, in violation of Title 21, United States Code, Sections 846, 841(a)(l) and 841(b)(l)(A). [DE 74 at 298]. She was a zero-point offender. [*Id.* at 306]. Based upon a total offense level of 26 and a criminal history category of I,

---

[1] The Court reminds the Defendant and her family that calling the Clerk's Office for "status updates" or other inquiries and that any requests, other than filing information should be made by motion to the Court.

the guideline imprisonment range was 63 months to 78 months, and she met the criteria set forth in 18 U.S.C. § 3553(f)(1)-(5) and as such no mandatory minimum applied. USSG §5C1.2(a). After granting a substantial variance which included reference to her family ties [DE 95 at 454], Harris was sentenced by the Honorable United States District Judge Joseph H. McKinley, Jr. to 36 months imprisonment with 4 years of supervised release. [DE 91 at 436-37]. After sentencing, Harris requested her surrender date be postponed for her to have surgery to have tumors removed off her thyroid and throat. [DE 98 at 464]. The motion was granted, and as a result she did not surrender until many months after her sentencing, "no sooner than October 23, 2023." [DE 99]. Her first request for compassionate release was submitted only 54 days after she began her term of imprisonment. [DE 116 at 577].

Harris indicates in her motions that she is her "fathers' caregiver, power of attorney, and executor of estate" and that he "has serious health issues for which I provide 24 hr. care." [DE 116 at 580]. Moreover, she asserts that she "had been his live-in care-taker for 2 yrs. prior to starting [her] sentence." [DE 132 at 665]. The PSR indicates that "she is the only source of support for her father who is in bad health. She reported that he has stage 4 kidney disease which may result in at-home dialysis. She sold her home in December 2021 and moved in with her father at the address listed above to be his caregiver." [DE 74 at 307]. The PSR also references her own "chronic medical issues related to Rocky Mountain Spotted Fever, small blockages in her heart, high cholesterol, fibromyalgia, and lupus," [DE 74 at 307], and her employment at Pizza Hut and various other locations [*id.* at 309].

Harris now moves for compassionate release asserting that she is the sole caretaker for her father.

## II.   ANALYSIS

### A. *Motions for Compassionate Release [DE 116; DE 132].*

####    a. Exhaustion of Administrative Remedies.

An inmate may seek compassionate release by the district court only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc) (describing statutory changes to exhaustion process). This exhaustion requirement is waivable, not jurisdictional—but becomes "mandatory" if the Government invokes it. *United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020); *United States v. Taylor*, No. 20-3642, 2020 WL 7383648, at *1 (6th Cir. Nov. 9, 2020). It is the defendant's burden to show that he has exhausted his administrative remedies. *United States v. Smith*, No. 6:13-CR-34-KKC, 2024 WL 3566697, at *1 (E.D. Ky. July 29, 2024).

Harris asserts that she sent a request for sentence reduction to the Warden on December 21, 2024 [DE 116 at 582], although this request appears to be improperly dated given that the Warden's response appears to be dated one day prior, on December 19, 2023. [DE 116 at 583]. As a result of the Warden's denial, the Court finds that Harris has met the exhaustion requirement and will address the merits of her motion.

####    b. Sixth Circuit "Three-Step Inquiry."

"Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A) grants that authority in certain limited circumstances. "Congress's use of 'may' in § 3582(c)(1)(A) dictates that the

4

compassionate release decision is discretionary, not mandatory." *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020). That said, district courts must "supply specific factual reasons for their compassionate release decisions." *Id.* at 1101-02.

After addressing exhaustion, district courts apply a "three-step inquiry" in considering a compassionate-release motion filed under § 3582(c)(1). *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quotation omitted). Release is appropriate only if (1) the prisoner shows that "extraordinary and compelling reasons warrant the [sentence] reduction," (2) the Court determines that "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the prisoner "persuade[s] the district judge to grant the motion after the court considers the § 3553(a) factors." *McCall*, 56 F.4th at 1054 (quotations omitted). District courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking. *Elias*, 984 F.3d at 519.

The Sentencing Commission amended the compassionate-release policy statement to describe six categories of extraordinary and compelling reasons that individually, or in combination, may support compassionate release. The updated policy statements "provide[ ] a non-exhaustive list of various circumstances that either alone or in combination qualify as extraordinary and compelling reasons for a sentence reduction." *United States v. Whitworth*, No. 1:23-CR-561-4, 2023 WL 8190131, at *2 (N.D. Ohio Nov. 27, 2023). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury;" (5) "other reasons" similar to those in (1)–(4); and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b).

The § 3553(a) factors to be considered include the prisoner's "history and characteristics, including his propensity to be a danger to the community upon release, as well as the nature and circumstances of his offense." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing § 3553(a)(1)–(2)).

> Among the variety of items that courts have considered in this step are conditions at the place of incarceration, the defendant's health issues, whether the defendant is receiving medical treatment for his or her health issues, the defendant's behavior in prison, the type of offense(s) for which the defendant was convicted, whether the defendant had prior criminal convictions (and, if so, how many and the seriousness of such crimes), whether the defendant had prior juvenile convictions, whether the defendant previously complied with any presentence or post-incarceration conditions, the amount of the sentence that the defendant has served to date, whether the court varied downward from the guidelines range when imposing the sentence, whether the defendant has had a drug addiction, the defendant's successful participation in substance abuse programming or other rehabilitation efforts while incarcerated, the defendant's successful participation in educational or vocational training while incarcerated, and whether the defendant took responsibility for his or her actions.

*United States v. Pooler*, No. 3:18-CR-00137, 2020 WL 7046964, at *5 (S.D. Ohio Dec. 1, 2020) (citing *Jones*, 980 F.3d at 1114; *United States v. Ruffin*, 978 F.3d 1000 at 1008-09 (6th Cir. 2020); *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (a court should consider "the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable"). But post-sentencing rehabilitation, standing alone, "does not rise to the level of an extraordinary and compelling reason for granting compassionate release." *United States v. Harper*, No. 22-1291, 2023 WL 10677931, at *3 (6th Cir. Dec. 12, 2023); *Jackson*, 2023 WL 9023349, at *2 (citing *Ruffin*, 978 F.3d at 1004).

The defendant bears the burden of establishing entitlement to a sentence reduction under 18 U.S.C. § 3582. *See United States v. Karr*, No. 6:17-CR-25-REW, 611 F.Supp.3d 395, 2020 WL 774363, at *6 (E.D. Ky. Feb. 18, 2020).

    c. <u>No Extraordinary and Compelling Reasons Warrant Early Release – Family Circumstances.</u>

Harris asserts that she is needed as a full-time caretaker for her father [DE 116 at 580; DE 132 at 665] and that is an "extraordinary and compelling" reason warranting early release.

Early release may be warranted if a defendant's immediate family member is "incapacitat[ed]" and the defendant is the only available or suitable caregiver. § 1B1.13(b)(3); *United States v. Mathews*, No. 2:19-cr-41, 2023 WL 5924411, at *3 (S.D. Ohio Sept. 12, 2023) (defendant bears burden to make this showing). Immediate family members include children, spouses and partners, parents, grandchildren, grandparents, and siblings. § 1B1.13(b)(3)(D). The Guidelines also allow for care of individuals who, though not immediate family members, have a "similar in kind" relationship with the defendant. *Id.*

In evaluating "incapacitation," courts have looked to the BOP guidelines for handling inmate compassionate release requests based on the incapacitation of a family member. *See, e.g., United States v. Walker*, 2024 U.S. Dist. LEXIS 25188, at *8 (D.N.J. Feb. 13, 2024); (*United States v. Collins*, 2020 U.S. Dist. LEXIS 5001, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020). The BOP guidelines have defined incapacitation as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [individual] . . . is completely disabled, meaning that the [individual] . . . cannot carry on any self-care and is totally confined to a bed or chair." *Walker*, 2024 U.S. Dist. LEXIS 25188, at *8 (quoting *Collins*, 2020 WL 136859) (citing BOP Program Statement § 5050.502)). When evaluating the incapacitation, adequate information and documentation should be provided including, but not limited to, a statement and verifiable medical documentation regarding incapacitation, a statement and letters of documentation that the inmate is the only family member capable of caring for the family member, and a statement and documentation regarding the inmate's release plan. *Collins*, 2020 WL 136859, at *4 citing *United*

*States v. Gutierrez*, 2019 WL 2422601, at *3 (D.N.M. 2019) and BOP Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at *1).

The Court notes that "[i]n general, having a sick or aging parent is not an extraordinary circumstance to release a prisoner." *United States v. Brewer*, 2022 WL 1125797, at *2 (E.D. Mich. Apr. 15, 2022). While the Court sympathizes with any family dealing with sick and aging family members, such situation is not by itself extraordinary. *See, e.g., United States v. Combs*, No. 2:19-CR-138, 2023 WL 6997117, at *2 (S.D. Ohio Oct. 24, 2023) ("This Court has declined to find that a defendant's ailing parent constitutes an 'extraordinary and compelling reason' justifying release."); *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("While the Court empathizes with the Ingram family's difficult situation and understands that Mrs. Ingram's medical conditions are no doubt serious, family circumstances that constitute 'extraordinary and compelling reasons' simply do not include Ingram's mother. Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary.").

As an initial matter, Harris' role as caretaker for her father and her father's medical conditions were known to the court at the time of sentencing. [DE 74 at 307 (noting her role as live-in caregiver in her PSR)]. As such, Harris' role as caretaker and her father's ailing health are not new developments. "[F]acts that existed at the time of sentencing do not constitute an extraordinary and compelling reason warranting a subsequent sentence reduction." *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022) (citing *Lemons*, 15 F.4th at 751); *United States v. Smith*, No. 3:21-CR-47-RGJ, 2024 WL 3656187, at *5 (W.D. Ky. Aug. 5, 2024). The question for the Court is now whether Harris has offered evidence as to how these conditions have worsened since her sentencing or whether the circumstances of his family have changed making her truly the only option to take care of her father.

8

First, the record is devoid of any information substantiating that Harris father is incapacitated. The Bureau of Prisons' Guidance on Compassionate Release has defined incapacitated as follows:

> Suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [parent] is completely disabled, meaning that the [parent] cannot carry on any self-care and is totally confined to a bed or chair; or A severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the [parent's] mental capacity or function), but may not be confined to a bed or chair.

Federal Bureau of Prisons, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) 10 (2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf. Harris has provided no medical records only a doctor note indicating that Mr. Harris requires a full-time caregiver for his chronic problems. [DE 118 at 593]. Although the doctor indicates that his health has been declining, it does not indicate for how long these chronic health issues have been in decline or his current physical status. [*Id.*]. While the record implies certain chronic conditions, the record does not reflect incapacitation. *United States v. Crider*, No. 6:14-CR-00044-GFVT-HAI-1, 2024 WL 1291492, at *2 (E.D. Ky. Mar. 26, 2024).

Second, nothing in the motion addresses whether Harris is truly the only option available to care for her father. The PSR indicates that she has one brother, Anthony Harris (age 42) and two maternal half-siblings, Kevin Sholar (age 54) and Stacy Sholar (age 55) as well as other family. [DE 74 at 306 (ages at time of PSR)]. Nothing indicates why none of these other individuals may be appropriate caregivers. Moreover, the motion does not address other supplemental sources of care for Harris' father, or whether he qualifies for Medicaid or skilled nursing care or other full time care services. *Collins*, 2020 WL 136859, at *4; *United States v. Hill*, No. 5:18-CR-50022, 2020 WL 3037226, at *3 (W.D. Ark. June 5, 2020). These factors are fatal to Harris' motions and

the Court cannot not find that the cited policy statement applies to generate extraordinary and compelling circumstances. *United States v. Corley*, No. 3:13-cr-00097-9, 2021 WL 119640, at *1 (M.D. Tenn. Jan. 13, 2021) ("There is simply no factual predicate for the Court to find that []family circumstances constitute extraordinary and compelling grounds for compassionate release, which typically requires a finding that the Defendant is the only available caregiver."); *United States v. Marshall*, No. 3:16CR-00004-JHM, 2020 WL 114437, at *3 (W.D. Ky. Jan. 9, 2020) (denying compassionate release when the record did not reflect incapacitation or lack of other caregivers). While the Court is sympathetic to Harris' difficult situation, there are simply no grounds to find exceptional circumstances. *See United States v. Akram*, 568 F. Supp. 3d 295, 298 (W.D.N.Y. 2021) ("Unfortunately, families often suffer due to the criminal conduct and subsequent incarceration of one of their members, and Defendant's family is likely no exception to this harsh reality.").

    d. <u>Section 3553(a) Factors</u>

Having found no extraordinary and compelling circumstances, the Court need not address the § 3553(a) factors, *Elias*, 984 F.3d at 519; however, for completeness of the record the Court will provide an assessment of these factors.

Section 3553(a)'s factors include:

> The nature and circumstances of the offense and the history and characteristics of the defendant and the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant.

18 U.S.C. § 3553(a) (1-2). A court need not "specifically articulat[e]" every single Section 3553(a) factor in its analysis. *Jones*, 980 F.3d at 1114 (internal quotation and citation omitted). Instead, the record "as a whole" must confirm that the pertinent factors were considered by the court. *Id.* For a

reviewing court, the record as a whole will constitute both the original sentencing proceeding and the compassionate release decision. *Id.* at 1112.

Here, the Section 3553(a) factors counsel against compassionate release. These factors were already fully considered by the sentencing court when applying a significant variance to Harris' sentence, cutting her sentence almost in half at the low end of the Guidelines. Family ties were one of the reasons specified for the variance. Moreover, while some time has passed since sentencing, the extension of that time was due to Harris' own medical requests. At this point still very little of Harris' sentence has been served, which factors heavily into the Court's determination on the Section 3553(a) factors.

After reviewing the PSR and statement of reasons and judgment, the Court's sentence adequately reflected the seriousness of the offenses, promoted respect for the law, provided just punishment, afforded adequate deterrence of future criminal conduct, and protected the public from future crimes of the defendant. *See* 18 U.S.C. § 3553(a)(2)(A)-(C). The Court's analysis on these factors remains unchanged from that at sentencing. The Court therefore finds that the retribution, deterrence, incapacitation, and rehabilitation interests served by the original sentence counsel against early release in this case.

### B. *Request to Seal [DE 132].*

Harris requests that documents attached to the motions be filed under seal. [DE 132 at 660, 664; DE 116 at 576, 580]. Specifically, she requests additional medical information be filed under seal. [*Id.* at 665]. Only docket entry 133 is currently filed under seal. [DE 133]

"The sealing of judicial documents and records is left to the sound discretion of the Court." *United States v. Kischnick*, No. 18-20469, 2020 WL 3172634, at *2 (E.D. Mich. June 15, 2020) (citing *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016)).

Here, the Court finds it appropriate to seal Harris' and her father's medical records to preserve their privacy interest in these documents. These records contain private information that goes well beyond his compassionate-release motion to personal information related to family members. *See United States v. Sanders*, No. 1:20-cr-00366, 2022 WL 896668, at *3 (N.D. Ohio Mar. 28, 2022) (granting the defendant's ex parte motions to file exhibits that have personal medical information under seal because "[s]ealing the exhibits at issue preserves [the defendant's] privacy interest in his medical records"); *Kischnick*, 2020 WL 3172634, at *2 (concluding that a "motion to seal should be denied because the information Defendant seeks to seal forms the primary basis for the relief he seeks" (internal citation omitted)). Accordingly, the Court will direct the Clerk's Office to seal docket entry 130-1 and keep docket entry 133 under seal. *United States v. Banks*, No. 18-CR-20462-2, 2022 WL 2679417, at *7 (E.D. Mich. July 11, 2022).

### III.   CONCLUSION

For all the reasons set forth above, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Harris' motions for compassionate release [DE 116; DE 132] are **DENIED**.

**IT IS FURTHER ORDERED** that the following docket entries shall be sealed or remain under seal: DE 130-1, and DE 133.

Rebecca Grady Jennings, District Judge
United States District Court

December 11, 2024

cc:   Defendant, *pro se*

12